BROWN | POORE LLP
Scott A. Brown (SBN 177099)
David M. Poore (SBN 192541)
1350 Treat Boulevard, Suite 420
Walnut Creek, California 94597
Telephone: (925) 943-1166
Facsimile: (925) 955-8600
sbrown@bplegalgroup.com

Attorneys for Plaintiff ELISABETH ANNE TERWILLIGER

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISABETH ANNE TERWILLIGER | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | **VIOLATION OF 42 U.S.C. §1983** |
| CITY OF PITTSBURG; BRIAN ADDINGTON and DOES 1-25, | |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Elisabeth Anne Terwilliger complains and alleges as follows:

**I.     INTRODUCTION**

1. This case involves civil rights claims and retaliation related to Plaintiff's wrongful termination by the City of Pittsburg's Police Department ("Defendant" or "Pittsburg"). Plaintiff was wrongfully terminated when she refused to sacrifice another officer who complained repeatedly about the Department's fraudulent crime reporting policies.

2. Plaintiff learned early in her employment that the Pittsburg Police Department was instructing her and its officers to falsify crime reports, refrain from documenting use of force, and submit police reports for lower crime classifications to result in the appearance of lower crime statistics in the City of Pittsburg. She discussed the Department's policy of fabricating crime statistics with another officer, Michael Sibbitt, who complained internally and reported these fraudulent policies to outside government agencies such as the Contra Costa County Sheriff's Department.

3. Defendants proceeded to retaliate against Plaintiff for associating with Officer Sibbitt. They placed her on Administrative Leave and refusing to reinstate her unless she sacrificed Officer Sibbitt for submitting an inaccurate incident report, which they had been ordered by a supervisor to redact and submit. When she refused to lie for the Department's cause, she was accused of undefined "alleged misconduct" and threatened with criminal prosecution if she did not resign from the Department. Defendant's threats and actions resulted in Plaintiff's constructive termination.

4. The purported basis for Plaintiff's termination violated her civil rights of due process, free speech and association, and was false and injured her personal, business, and professional reputation. Defendants continue to sabotage Plaintiff's ability to seek employment in law enforcement by misrepresenting her background and reason for termination to prospective employers.

## II.     PARTIES

5.     Plaintiff Elisabeth Anne Terwilliger is an individual over the age of 18 and, at all relevant times, was an employee of Defendant City of Pittsburg from September 2012 through August 2014.

6.     Plaintiff is informed and believes, and on that basis alleges, Defendant City of Pittsburg is and at all times mentioned herein an entity of the State of California with its principal place of business in Pittsburg, California.  Plaintiff is informed and believes, and on that basis alleges, that City of Pittsburg, was authorized to operate and do business in this judicial district in the State of California.  Defendant is, and at all relevant times hereto, has been an employer within the State of California, who regularly employed more than five persons, including Plaintiff.

7.     Defendant Brian Addington is an individual whose residence is located in the State of California. Defendant is presently the Chief of Pittsburg Police Department, and, as a result, was a supervisor and/or managerial employee of Defendant City of Pittsburg.  For purposes of the Civil Rights Act, Defendant Addington is being sued in his official and/or individual capacity acting under color of law.

8.     Plaintiff does not know the true names and capacities of Defendants sued herein as DOES 1 through 25, and therefore sues these Defendants by fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to, and that Plaintiff's injuries and damages as set forth were proximately caused by said defendants. Plaintiff will amend this complaint to state the true names and capacities when ascertained.

9.     Plaintiff is informed and believes, and thereby alleges that each of the Defendants, herein were at all times relevant hereto, the agents, representatives, servants and employees of the remaining Defendants, and were acting at least in part within the course and scope of such relationship, and that the wrongful acts alleged herein were committed by such Defendants, and each of them.  Further, Plaintiff is informed and believes that Defendants were, at all relevant times, one integrated enterprise and/or employer.

### III. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331, in that Plaintiff is asserting federal claims, Defendant employed Plaintiff in California and regularly conducts business in California.

11. Venue is proper in the Northern District of California in that Plaintiff was employed by Defendant in this judicial district, Plaintiff's supervisors were headquartered in this judicial district, and Defendant's unlawful conduct was directed from, and carried out in its offices in this judicial district.

### IV. FACTUAL BACKGROUND

12. In September 2012, Defendant City of Pittsburg hired Plaintiff as a Police Officer I. As part of her employment, Plaintiff performed her duties and responsibilities in a professional manner. She received praise from members of the public, as well as management staff, and received positive performance evaluations. At all relevant times, Plaintiff possessed the requisite skills in her position and was capable of performing the essential functions of her job.

13. Plaintiff, and a fellow officer, Michael Sibbitt, were hired by the Department on the same date. Although they operated separate vehicles, they were assigned the same shifts and territories, frequently received the same dispatches, and appeared at the same incidents. They discussed their cases with each other and worked together on investigations. Other officers referred to them as a partnership, "Sib-Beth."

14. Plaintiff completed her probation period with City of Pittsburg and, as a result, had a protected property interest in her employment, including a legitimate expectancy of continued public employment, entitling her to due process protection.

**A.    Plaintiff learns of Pittsburg's policy of downgrading and burying crimes.**

15. As Plaintiff began her employment with City of Pittsburg, she learned that its police department had a misleading and unsafe policy on documenting incidents, completing reports, and assigning violations. During training sessions, her supervisors instructed her and her fellow officers not to assign a felony to a crime unless an arrest had been made, and, preferably, witnesses were readily available and willing to testify to confirm a crime. Further, Plaintiff and

3

her co-officers were told to discount felonies to misdemeanors, particularly if they could be categorized as a "wobbler" (felony or misdemeanor), or to classify the crime as a "suspicious circumstance." Defendant, by mandating these lesser crime classifications and instructing officers to redact incident reports, artificially spiked its department's crime solving rate, and misrepresented the City of Pittsburg's safety.

16. Plaintiff discussed Defendant's pattern and practice of discounting serious crimes and falsely labeling certain felonies as "suspicious circumstances" with Officer Sibbitt, on multiple occasions, verbally and with computer messaging (i.e., Mobile Dispatch Computer). Plaintiff discussed with Officer Sibbitt Defendant's emphasis on not documenting the use of force by an officer, and how crimes were wrongly classified by Defendant, and how they did not agree certain felonies should be classified as misdemeanors so that Defendant's department did not have to conduct a follow up investigation. Defendant, including Plaintiff's supervisors, knew Plaintiff and Officer Sibbitt discussed these issues because they had access to Plaintiff's messages which were transmitted through the same radio frequency and they reviewed them throughout her employment.

17. Officer Sibbitt complained on numerous occasions to the Department and his supervisors about the Department's policy of downgrading felony crimes to misdemeanors, classifying crimes as "suspicious circumstances", and misusing police resources.

### B. Defendants ordered Plaintiff and Officer Sibbitt to redact their incident reports to omit references to using force.

18. Throughout Plaintiff's employment, the Pittsburg Police Department, through its training officers and supervisors, directed Plaintiff and her co-officers not to report incidents where they employed force even if force was reasonable and necessary to take a suspect into custody and was consistent with police protocol.

19. On April 27, 2014, Officer Terwilliger detained a vehicle at the Meadows Mobile Home Park in Pittsburg. The vehicle contained four male individuals in gang affiliated clothing. As Terwilliger, the primary officer, questioned one of the suspects in the car, she observed what she believed to be a black berretta hand gun between the driver's seat and door sill. Officer

4

Terwilliger yelled, "Gun! Gun!" and demanded that the driver exit the car. While the suspect exited the car, he tried to flee and began wrestling with Terwilliger. They toppled to the ground where Terwilliger managed to secure the suspect's upper body to the ground such that his right arm was pinned underneath. He continued to resist apprehension and flailed his legs about, trying to get into a kneeling position. Officer Sibbitt backed up the call and arrived upon Officer Terwilliger and the suspect in this position. Unable to see the suspect's right hand and after just hearing Terwilliger yell, "Gun! Gun!", Sibbitt believed the suspect was going for a gun while trying to get leverage on Terwilliger. Therefore, in accordance with Department protocol for exercising reasonable force in defense of a third person, Sibbitt struck the suspect on the right upper arm with his flashlight to gain compliance. Plaintiff's supervisor, Sergeant William Hatcher, and several other officers arrived on the scene. Upon further inspection, the perceived handgun was discovered to be a replica of a berretta handgun (BB gun with orange tip removed).

20.  Sergeant Hatcher determined that no crime would be documented and the suspect was not going to be arrested. Sergeant Hatcher told Officer Terwilliger not to arrest anyone for obstructing or resisting an officer or being in possession of a replica firearm, and to remove the handcuffs and release the suspect. He directed Officer Terwilliger to take possession of the BB gun and record it only as a "found property." Sergeant Hatcher ordered Sibbitt not to document anything in relation to this incident, and to clear the scene and respond to other calls.

21.  That same evening, Sibbitt received calls and MDC messages from a Contra Costa County deputy sheriff who learned of his struggle and asked Sibbitt what happened. Sibbitt described the incident and told him that he needed to use his flashlight to subdue a suspect and protect Terwilliger. Sibbitt and other officers referred to the restraint as "flashlight therapy", a slang phrase for use of reasonable and justified force. Another officer with the City of Pittsburg referred to Sibbitt's struggle as "flashlight work."

22.  Pittsburg police officers and supervisors discussed these two "flashlight" incidents in pre-shift briefings several weeks later. They joked and shared their own stories regarding use of force or similar incidents. None of these officers had been disciplined or even warned about using their flashlights to subdue suspects.

5

ELISABETH ANNE TERWILLIGER v. CITY OF PITTSBURG, ET AL.
COMPLAINT

**C.     Terwilliger is placed on Administrative Leave for no defined reason.**

23.    On June 18, 2014, Plaintiff appeared for her shift and was handed a memorandum informing her that she was being placed on Administrative Leave and an Internal Affairs investigation would commence. Plaintiff was not provided any reason. No specifics were given. Plaintiff's gun and badge were taken. She was escorted out of the building to her car in the parking lot and told not to have any contact with anyone in the Department.

24.    Officer Sibbitt, who had started his employment on the same date as Plaintiff, and joined her on numerous calls and investigations, was also placed on Administrative Leave on June 18, 2014, before his shift began.

25.    Plaintiff was interviewed, a few days later, regarding the Mobile Meadows mobile home park apprehension. When discussing the omission in the incident report of the flashlight and force used to subdue the suspect, she was pressured by Defendants to take the position that she did not include this information because she thought Officer Sibbitt would include it in his report. Union President Chuck Blazer explained that Plaintiff's best course of action was not to expose Sergeant Hatcher, rather, to blame Sibbitt by contending she did not know Sibbitt used force and thought Sibbitt would mention the incident in his report. Plaintiff Terwilliger explained that she had refused to fabricate the report because she knew that Sergeant Hatcher had specifically ordered both of them not to document the use of flashlight or force in their reports. She refused to sacrifice Officer Sibbitt and insisted, "I'm not going to lie."

**D.     Defendants threaten Terwilliger and Sibbitt with criminal charges and constructively discharge them.**

26.    On or about July 29, 2014, Defendants informed Plaintiff that they requested a criminal investigation and were asking the District Attorney's Office to pursue criminal charges against her. They did not advise her of any specific allegations or charges she had allegedly committed, in direct violation of the Public Safety Officers Procedural Bill of Rights. Plaintiff learned that an Internal Affairs investigation had been assigned to Lieutenant Wade Derby. Plaintiff understood that Lt. Derby was the subject of at least two sexual harassment charges lodged by other female officers in the Department. As such, she was disappointed to learn that

Lt. Derby would be conducting her investigation and did not believe she would receive a fair, impartial and non-biased investigation. Neither officer was interviewed as part of any Internal Affairs investigation or given a copy of an Internal Affairs report.

27. Instead, Defendant advised Plaintiff that she had two options: (1) Fight the "alleged misconduct" charge and she would be terminated and criminal charges would be filed; or (2) Resign immediately with no criminal charges and the Internal Affairs investigative report would be "buried." Plaintiff felt intimidated and coerced and viewed the working conditions as intolerable. She was concerned that Defendant City of Pittsburg would follow through with its threat of criminal prosecution. She believed Defendant was capable and willing to fabricate events to destroy Plaintiff's career and she was concerned about the affect a criminal prosecution, however baseless, would have on her ability to gain comparable employment. At this point, Plaintiff understood she had no other choice but to quit. Accordingly, on or about August 4, 2014, she signed a resignation letter under duress and was constructively terminated for false, inconsistent, and untrustworthy reasons. Officer Sibbitt was also constructively terminated on August 4 in the same manner.

**E.  Defendant sabotages Plaintiff's job prospects and reputation after termination.**

28. Since Plaintiff's termination, she has reasonably and diligently sought comparable employment with 13-15 law enforcement agencies. However, Defendant has obstructed Plaintiff's efforts to obtain gainful employment, particularly, when investigators for at least two prospective employers approached Defendant for background checks. Consequently, Plaintiff has not received offers of employment. Given the allegations of "alleged misconduct" against Plaintiff, her career in law enforcement is over.

**FIRST CAUSE OF ACTION**
**(Violation of 42 U.S.C. §1983)**
**(All Defendants)**

29. Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further alleges as follows.

30. In acting above, Defendant violated Plaintiff's due process, speech, and petition rights under the First and Fourteenth Amendments to the United States Constitution, and, acting under color of authority, further violated Plaintiff's rights under 42 U.S.C. § 1983.

31. Defendants violated Plaintiff's Fourteenth Amendment due process rights, in that they constructively discharged her without due process of the law. Defendants failed to provide Plaintiff with notice and an opportunity to respond to any alleged misconduct prior to her discharge, through a liberty interest hearing or other forum. Further, Defendants violated Plaintiff's due process rights by threatening and intimidating Plaintiff to falsely blame Officer Sibbitt for the omission of use of force in the incident report when the omission had been ordered by Sergeant Hatcher. Defendants also violated her due process rights by threatening and intimidating Plaintiff to force her to resign her employment and by failing to conduct their own independent, fair, and impartial investigation of the matter. In addition, Defendants violated Plaintiff's due process rights when they deprived her of a liberty interest without due process because of the stigmatizing manner in which she was terminated. Plaintiff was forced to resign as a result of duress, coercion, threats, and intimidation for reasons that were false, publicized, and stigmatizing to her standing or reputation in her community. Further, Plaintiff has been denied other employment opportunities as a result of this stigma.

32. Defendants violated Plaintiff's First Amendment rights in that they retaliated against her for making complaints of public concern to Officer Sibbitt, and constructively terminated Plaintiff as a result of her association with Officer Sibbitt who was terminated after he complained and reported Defendant's policies of (a) fabricating crime statistics to the Federal Bureau of Investigation and general public; (b) instructing rank and file officers to alter and redact their incident reports; (c) not investigating or pursuing crimes in its district; and (d) misusing police resources.

33. Plaintiff is informed and believes that Defendant City of Pittsburg has a long-standing and pervasive custom, policy, pattern, and well settled practice of retaliating against employees who make complaints of public concern. Defendant City of Pittsburg is a moving force behind this policy and custom.

34. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

35. Defendants' actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to her damage in an amount according to proof.

36. The acts of the individual defendant, Chief Brian Addington, as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause Plaintiff mental anguish, anxiety, and distress. Defendants' acts were done in conscious disregard of the risk of severe emotional harm to plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling Plaintiff to punitive damages as to the individual defendants.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants, and each of them as follows:

1. That Defendants are found to have violated the above-referenced provisions of 42 U.S.C. § 1983 as to Plaintiff;

2. That Defendants are required to pay compensatory damages, including but not limited to lost earnings, pre-judgment and post-judgment interest, and damages for emotional pain and suffering due to retaliation inflicted upon Plaintiff, among other relief;

3. That the individual Defendant is required to pay Plaintiff punitive damages for his malicious, reckless or callous indifference to the rights of Plaintiff;

4. For equitable and/or injunctive relief, including reinstatement, according to proof;

5. That Plaintiff receives an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1983 and Code of Civil Procedure § 1021.5, as well as any other applicable statute;

6. That the Court order further relief, in law or equity, as it deems appropriate and just.

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

Dated: August 3, 2016           BROWN POORE LLP


By:   /s/ Scott Brown
      Scott A. Brown
      Attorneys for Plaintiff